UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

HESS CORPORATION,

                              Plaintiff,

  -v.-                                      5:10-CV-0587
                                                      (NPM)

BALL CORPORATION; BALL
PACKAGING CORPORATION; BALL
PLASTIC CONTAINER CORPORATION;
and BALL METAL BEVERAGE
CONTAINER CORPORATION,

                              Defendants.

---

| APPEARANCES: | OF COUNSEL: |
| --- | --- |
| STROOK & STROOK & LAVAN LLP<br>Attorneys for Plaintiff<br>180 Maiden Lane<br>New York, NY 10038 | CLYDE G. SZYFER, ESQ.<br>LAUREN V. DILEONARDO, ESQ.<br>SANDRA J. RAMPERSAUD, ESQ. |
| HISCOCK & BARCLAY, LLP<br>Attorneys for Plaintiff<br>One Park Place<br>300 South State Street<br>Syracuse, NY 13202-2078 | ROBERT A. BARRER, ESQ. |
| GOLDBERG SEGALLA LLP<br>Attorneys for Defendants<br>5789 Widewaters Parkway<br>Syracuse, NY 13214 | KENNETH M. ALWEIS, ESQ.<br>MOLLY M. RYAN, ESQ. |

Neal P. McCurn, Senior District Judge

## *MEMORANDUM-DECISION and ORDER*

### *I. Introduction*

In this diversity action for breach of contract under New York common law, the parties have filed respective motions for summary judgment, which are now fully briefed. Plaintiff, Hess Corporation ("Hess") brings this action against defendants, Ball Corporation; Ball Packaging Corporation; Ball Plastic Container Corporation; and Ball Metal Beverage Container Corporation ("Ball"), seeking close to five million dollars in damages on its claims for breach of contract and breach of the duty of good faith and fair dealing. Ball moves for summary judgment as to the entire action, and Hess moves for summary judgment solely as to liability. Decision is rendered on the submitted papers, without oral argument.

### *II. Legal Standard*

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden to show the court why it is entitled to summary judgment. See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)). If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact. See id., at 273 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).

When the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598

(1970)).  Where, as here, a court is considering multiple motions for summary judgment, each party's motion must be evaluated "on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Byrne v. Rutledge, 623 F.3d 46, 53 (2d Cir. 2010) (quotation and citation omitted).

### III.  *Factual Background*

On October 23, 2006, Hess and Ball entered into a contract entitled "Base Agreement for the Purchase and Sale of Electricity" ("the Base Agreement").  On June 30, 2008, Hess and Ball entered into a Transaction Confirmation ("the Transaction Confirmation").  Together, the Base Agreement and the Transaction Confirmation comprise a single contract.

Hess is an integrated energy company engaged in, among other things, the marketing of electricity.  As part of its energy marketing business, Hess arranges for the supply of electricity directly to commercial, industrial and institutional customers.  At the time of the execution of the Base Agreement and Transaction Confirmation, which comprise the agreement at issue in this action, Ball was engaged in the business of manufacturing plastic containers at property it leased at 2900 Mclane Drive in Baldwinsville, New York.  Ball maintained a plant at this location totaling 496,200 square feet.  Ball's lease runs through at least May 2013.

Pursuant to the Base Agreement, "[Ball] is obligated to purchase and receive, and [Hess] is obligated to sell and deliver, 100% of [Ball's] usage requirements at the Delivery Point[1] during the specified time period."  ¶ 2 to Base

---

[1]  "Delivery Point" is defined in the Base Agreement and the Transaction Confirmation as the control area of the utility, NiMO, which is short for Niagara Mohawk Power Corporation.

3

Agreement at Ex. A to Aff. of Richard Switzer, June 29, 2011, Dkt. No. 44 and Ex. D. to Decl. of Kenneth M. Alweis, June 30, 2011, Dkt. No. 55 ("Base Agreement").  Ball is further bound to use the electricity "only at the listed Service Locations" and is prevented from reselling the electricity or using it at other locations without Hess's written consent.  See id.  "Service Location" is defined in the Transaction Confirmation as 2900 McLane Drive, Baldwinsville, New York, 13027.  The definition also includes an accompanying utility account number.

The Base Agreement further provides that "[i]f in any month, [Ball] fails to timely notify [Hess] of any actual or anticipated Material Usage Deviation so that [Hess] may be able to adjust deliveries accordingly, and if as a result of [Ball's] failure to provide such timely notice, [Hess] incurs additional costs to serve [Ball, Hess] may invoice [Ball] for such additional costs and [Ball] agrees to pay such invoice."  ¶ 4 to Base Agreement.  A "Material Usage Deviation" is defined as "a non weather related shift or change in [Ball's] monthly usage of 25% or more compared to [Ball's] Base Monthly Usage."  Id. at ¶ 3.  "Base Monthly Usage" is defined as the "estimate of [Ball's] usage determined by using historical average usage information."  Id.  Under the heading, "Contract Quantity," the Transaction Confirmation lists Ball's Base Monthly Usage each month from January through December, presumably for the year previous to its execution.

Pursuant to Paragraph Ten of the Base Agreement, entitled "Plant Closure/ Sale of Facility,"

> [i]n the event that [Ball] elects to close or sell a facility ("Facility") that is a Service Location under this Agreement, [Ball] will inform [Hess] by written notice at least sixty (60) days prior to the proposed shut-down or sale of the Facility.  Such notice by [Ball] will be deemed

4

> a request by [Ball] to terminate this Agreement as it relates to such Facility ("Early Termination") and for [Hess] to liquidate all Electricity and related financial products purchased by [Hess] to serve the Facility. ... [F]ailure of [Ball] to provide [Hess] with the requisite notice of an Early Termination will be deemed an Event of Default under this Agreement.

¶ 10 to Base Agreement. Paragraph Twelve of the Base Agreement provides for certain remedies to the non-defaulting party due to an Event of Default. These remedies include (1) the withholding of any payments or the suspension of any deliveries due; (2) with at least one day's notice, acceleration of any and all amounts owing as well as termination and liquidation of any or all transactions; (3) determination of a settlement amount for each transaction by calculating gains, losses and costs associated with the liquidation; and (4) calculation of a net settlement amount by aggregating all settlement amounts and other amounts owing between the parties.

Hess has contracted for the sale of electricity to Ball at the Baldwinsville, New York Service Location since 2003. The October 23, 2006 Base Agreement was a renewal contract, as was the June 30, 2008 Transaction Confirmation.

On April 6, 2009, Ball's Chairman, President and Chief Executive Officer formally authorized the closure of Ball's plant in Baldwinsville, New York. On April 8, 2009, Ball notified Hess by letter that effective mid-July 2009, Ball "intends to reduce electricity consumption at our Baldwinsville, NY facility . . . by more than 25% of our 'Base Monthly Usage' as identified in [the Transaction Confirmation]." Hess's Statement of Material Facts ("SOMF") at ¶ 77, Dkt. No. 45; Ball's Resp. to Hess's SOMF at ¶ 77, Dkt. No. 57. By that same letter, Ball

5

further notified Hess that it would be decreasing its electricity consumption at the Baldwinsville, New York plant by 97% from an average of four million kilowatt hours per month to an estimated 90,000 kilowatt hours. Nowhere in the letter does Ball state that the Baldwinsville plant would be closing. On July 30, 2009, Hess notified Ball that it disagreed with Ball and that Hess maintains that Ball's proposed actions constitute a closure of the Baldwinsville facility. However, Hess agreed to continue providing electricity under the Transaction Confirmation while the parties resolved their differences.

Effective September 9, 2009, Ball subleased 256,200 square feet of their leased space at 2900 Mclane Drive to McLane Northeast, a supply chain services company. By that time, Ball's actual electricity consumption had dropped to 468,329 kilowatt hours, and Ball had terminated 108 of the 113 employees who worked at its Baldwinsville plant.

Hess eventually commenced this action and now seeks summary judgment on its claims, but only as to liability. Ball moves for summary judgment on the entire action, and further seeks an order that Hess is not entitled to its attorney's fees related to the prosecution of this action.

## IV.  Discussion

### A.  Breach of the Duty of Good Faith and Fair Dealing

In support of its motion for summary judgment, Bell argues, and Hess does not dispute, that the claim for breach of the duty of good faith and fair dealing is duplicative of the breach of contract claim and therefore must be dismissed. See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 434 n.17 (2d Cir. 2011) (citing Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir.2002)). Moreover, in support of its motion for summary judgment, Hess limits its

6

arguments to its claim for breach of contract. Accordingly, the claim for breach of the duty of good faith and fair dealing is dismissed with prejudice, and the court will address the motions solely as to the claim for breach of contract.

### *B. Breach of Contract*

Because this court has diversity jurisdiction of this action, and pursuant to the express terms of the contract at issue, the breach-of-contract claim will be analyzed pursuant to New York common law. Under New York law, a claim for breach of contract "requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

In this case, there is no dispute as to the first two elements. The parties do dispute whether a breach occurred, and if so, whether, and to what extent, Hess was damaged.

In support of its motion for summary judgment, Hess argues that Ball's failure to advise Hess of the Baldwinsville plant closure constitutes an event of default. Hess does not seek summary judgment regarding an amount of damages, but argues it is entitled to an award of damages under Paragraph Twelve of the Base Agreement.

Ball argues, in support of its motion for summary judgment, that (1) it did not breach the contract since (a) it is a requirements contract with no minimum amount of consumption required; (b) it did not close the Service Location; (c) it provided timely notice of its Material Usage Deviation; and (d) even if it did close the Service Location, it gave timely notice to Hess; (2) if the court finds that it breached the contract, Hess's claimed damages are speculative; and (3) if the court finds that it breached the contract, Hess is not entitled to attorney's fees for

prosecuting this action.

"Summary judgment is only proper in contract disputes if the language of the contract is wholly unambiguous." Lucente v. International Bus. Machs. Corp., 310 F.3d 243, 257 (2d Cir. 2002) (quoting Mellon Bank v. United Bank Corp., 31 F.3d 113, 115 (2d Cir.1994) (internal quotations omitted)). Ascertaining whether the language of a contract is clear or ambiguous is a question of law to be decided by the court. See id.

"The general rule is that ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and ... is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 197 (2d Cir. 2005) (citations and quotation omitted). In contrast, contract language is unambiguous where it "has a definite and precise meaning, unattended by danger of misconception ... and concerning which there is no reasonable basis for a difference of opinion." Id. (quoting Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993)).

Here, both Hess and Ball argue that Paragraph Ten of the Base Agreement, regarding a "Plant Closure/Sale of Facility" is unambiguous, although they disagree as to its meaning. An ambiguity is not created merely by parties to a contract urging conflicting interpretations of their agreement. See Sayers, 7 F.3d at 1095. The court's task is to determine whether such clauses are ambiguous when "read in the context of the entire agreement. By examining the entire agreement the court safeguards against adopting an interpretation that would render any individual provision superfluous." See id. In doing so, the court is

8

mindful that when interpreting a contract under New York law, "words and phrases ... should be given their plain meaning and the contract should be construed so as to give full meaning and effect to all of its provisions." LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (citation and quotation omitted). "[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible." Id.

To reiterate, pursuant to Paragraph Ten of the Base Agreement, entitled "Plant Closure / Sale of Facility,"

> [i]n the event that [Ball] elects to close or sell a facility ("Facility") that is a Service Location under this Agreement, [Ball] will inform [Hess] by written notice at least sixty (60) days prior to the proposed shut-down or sale of the Facility. Such notice by [Ball] will be deemed a request by [Ball] to terminate this Agreement as it relates to such Facility ("Early Termination") and for [Hess] to liquidate all Electricity and related financial products purchased by [Hess] to serve the Facility. ... [F]ailure of [Ball] to provide [Hess] with the requisite notice of an Early Termination will be deemed an Event of Default under this Agreement.

¶ 10 to Base Agreement. Ball urges the court to interpret Paragraph Ten as referring to the real estate that is 2900 Mclane Drive in Baldwinsville, New York, and not the business that it operated there. Hess urges the exact opposite interpretation. Read in the context of the entire agreement, there is no question that Paragraph Ten, which includes "Plant Closure" as part of its heading, refers to the operation of the plastics plant, and not the use of the building which housed it. Since there is also no question that Ball closed its plastic business at 2900 Mclane Drive, Paragraph Ten controls, requiring that Ball notify Hess sixty days prior to

the closing.

Ball argues that, should the court find, as it has, that Paragraph Ten controls, it should also find that Ball's April 8, 2009 notice to Hess should be interpreted to comply with the notice requirement set forth in Paragraph Ten. Ball's April 8, 2009 letter to Hess gave Hess notice that Ball would be decreasing its electricity consumption at the Baldwinsville facility by more than 25% effective mid-July 2009. Such notice was an attempt by Ball to invoke the provision in Paragraph Four of the Base Agreement, requiring timely notice of an anticipated Material Use Deviation, and was not notice of its plan to shut down operations of its plastics plant in accordance with Paragraph Ten. Accordingly, because Ball closed its plastics plant and failed to give Hess timely notice, it created an Event of Default and consequently breached its agreement with Hess.

Regarding the final element of Hess's breach-of-contact claim, it is clear from the record that Hess was damaged. Ball admits as much, arguing that Hess's damages should be limited to $11,000. The parties disagree as to whether the remedies provision set forth in Paragraph Twelve should control. However, Ball's arguments that Paragraph Twelve should not control are premised on its argument that no Event of Default occurred because it complied with the notice requirement set forth in Paragraph Ten, which the court has already concluded was not the case. Accordingly, Paragraph Twelve controls, and Ball is liable to Hess for damages under that provision. The exact amount of damages, however, shall be left for resolution at trial in the event the parties are unable to come to a settlement agreement in that regard.

The remaining issue to be resolved is whether Hess is entitled to its attorney's fees for prosecuting this action. Pursuant to New York law, "a contract

that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008). More to the point, "it is well settled in New York law that, inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood [American Rule] that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of that rule unless the intention to do so is *unmistakably clear* from the language of the promise." U.S. Fidelity and Guar. Co. v. Braspetro Oil Servs Co., 369 F.3d 34, 75 (2d Cir. 2004) (emphasis added) (citing Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989)).

Here, Ball seeks an order that Hess is not entitled to its attorney's fees as a matter of law. In opposition, Hess contends that pursuant to Paragraph Six of the Base Agreement, it is entitled to an award of attorney's fees. According to Paragraph Six, entitled, "Billing and Payment,"

> [Hess] will invoice [Ball] for Electricity delivered under the Transaction(s) and any other amounts incurred by [Ball] under the Agreement. [Ball] will make payment pursuant to [Hess's] invoice instructions within fifteen (15) days of the date of [Hess's] invoice. If [Ball] disputes any Invoiced amount, [Ball] will contact [Hess] immediately and pay the undisputed amount by the payment due date. If payments have been made and it is subsequently determined that [Hess] overcharged or that [Ball] was undercharged, then as applicable, [Hess] will refund the overcharged amount or [Ball] will pay [the] undercharged amount within the standard payment terms herein. No retroactive adjustments will be made beyond a period of

11

> twenty-four (24) months from the date of a billing discrepancy. If the volumes delivered cannot be verified by [Hess] at the time the invoice is issued, the invoice volumes will be based on [Hess's] good faith estimate of the volumes delivered. Unless disputing an invoice as provided for herein, if [Ball] fails to remit the full amount payable by it when due, [Ball] will pay interest from the due date until the date payment is made. ... [Ball] will be responsible for all costs, fees and expenses (including reasonable attorney's fees) incurred by [Hess] in collecting the amount payable.

¶ 6 to the Base Agreement. Paragraph Six refers to the collection of payment on an invoice, not, as here, litigation for breach of the agreement. By contrast, Paragraph Sixteen of the Base Agreement sets forth the parties' agreement that "[Ball] will defend and indemnify [Hess] against all losses, costs and expenses, including costs and reasonable attorney's fees, *arising out of claims regarding personal injury or property damage* ... [and that] [Hess] will defend and indemnify [Ball] against any losses, costs and expenses, including court costs and reasonable attorneys' fees, *arising out of claims of title, personal injury or property damage*... ." ¶ 16 to the Base Agreement (emphasis added). Had the parties intended to require indemnification for attorney's fees arising out of claims for breach of the agreement, they could have done so, making their intention unmistakably clear. Because they have failed to do so, the court will not direct that Hess is entitled to attorney's fees stemming from its prosecution of this action against Ball.

## *V.  Conclusion*

In accordance with the foregoing, it is ORDERED that the motion for summary judgment by plaintiff, Hess Corporation regarding liability as to its breach of contract claim, see Dkt. No. 39, is GRANTED; and it is further

ORDERED that the motion for summary judgment by defendants Ball Corporation; Ball Packaging Corporation; Ball Plastic Container Corporation; and Ball Metal Beverage Container Corporation, see Dkt. No. 37, is GRANTED in part and DENIED in part; and it is further

ORDERED that plaintiff's claim for breach of the duty of good faith and fair dealing is DISMISSED with prejudice.

Remaining for resolution at trial is the amount of damages due Hess Corporation under Paragraph Twelve of the Base Agreement. The parties are strongly encouraged, however, to negotiate a settlement agreement regarding damages, and shall report their progress to the court in said negotiations no later than thirty days from the date of filing of this order.

IT IS SO ORDERED.

DATED:    April 25, 2012
          Syracuse, New York

_____
Neal P. McCurn
Senior U.S. District Judge